UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEMEKO WHATLEY,                     )
                                    )
        Plaintiff,                  )
                                    )
    vs.                             )          Case No. 4:08CV01108 ERW
                                    )
UNITED PARCEL SERVICE, INC.,        )
                                    )
        Defendant.                  )

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment [doc.
#42].

I.      **PROCEDURAL BACKGROUND**

On July 28, 2008, Plaintiff Demeko Whatley ("Plaintiff") filed a lawsuit against Defendant

United Parcel Service, Inc. ("Defendant").  Plaintiff filed his First Amended Complaint on

October 21, 2008.  On April 24, 2009, Plaintiff filed his Second Amended Complaint.  The Court

granted Plaintiff leave to file his Third Amended Complaint, which was filed on July 2, 2009.  In

his *pro se* Employment Discrimination Complaint [doc. #39], Plaintiff states that he brings his suit

under Title VII of the Civil Rights Act of 1964 alleging that Defendant retaliated against him after

he participated in a hearing involving one of his co-workers.  Plaintiff also alleges violations of

RICO and other criminal statutes.

Defendant filed the pending Motion for Summary Judgment [doc. #42] on September 1,

2009.  Plaintiff filed his Response to the Motion for Summary Judgment [doc. #46] on September

14, 2009. Defendant subsequently filed its Reply to Plaintiff's Response [doc. #47] on September 18, 2009.

## II.    BACKGROUND FACTS[1]

The Court begins by noting that, in a motion for summary judgment, the Local Rules require the nonmoving party to "include a statement of material facts as to which the party contends a genuine issue exists," and to provide specific references to the record for those matters contested by the nonmoving party. Local Rule 7-4.01(E). Any matters that are not specifically controverted by the nonmoving party are deemed admitted for the purpose of summary judgment. *Id.* Local rules such as this are implemented in order to prevent district courts from having to "scour the record looking for factual disputes." *Nw. Bank & Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003).

In addition, Federal Rule of Civil Procedure 56(e) requires the nonmoving party to respond to a motion for summary judgment, but, in doing so, it "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." This requires the nonmoving party to present "'more than a scintilla of evidence.'" *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 812 (8th Cir. 2008) (quoting *Williams v. City of Carl Junction*, 480 F.3d 871, 873 (8th Cir. 2007)). The district court "'is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'" *Holland*

---

[1]The Court's recitation of the facts is taken primarily from Defendant's Statement of Uncontroverted Material Facts [doc. #43, p. 1-2] since Plaintiff provided no response to Defendant's Statement of Uncontroverted Material Facts. The Court also considered various exhibits, where appropriate.

*v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007) (quoting *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1069 (8th Cir. 2005)).

Turning to the facts of this case, Plaintiff began working at Defendant's facility in Earth City, Missouri in 2001. By August 2002, Plaintiff had become a part-time supervisor at the company. As a supervisor, Plaintiff was required to report any discrimination or harassment that he observed.

From about July 2005 to December 2005, Plaintiff worked as a part time supervisor on the Package Secondary Sort Aisle and supervised an employee named Lamont Richardson ("Richardson"). During the time Plaintiff supervised Richardson, Richardson complained about his coworker, Laura Moellering. Richardson complained that Ms. Moellering would not give him gas money when they car pooled. Richardson also complained that Ms. Moellering made a comment to another coworker regarding his weight gain and that she claimed to have seen him with his shirt off. Richardson then asked Plaintiff to separate him and Ms. Moellering. Plaintiff also passed on Richardson's complaint to his manager, Rick Potter.

At about December 2005, Danielle O'Laughlin replaced Plaintiff as the Package Secondary Sort Aisle Supervisor.[2] In January 2006, Ms. O'Laughlin accused Richardson of sexual harassment. Ms. O'Laughlin complained that Richardson repeatedly stared at her crotch, repeatedly "looked her up and down," and also licked his lips and said "Damn baby, do you work out because you look good." Sally Lee, a manager in the UPS Security Department, investigated Ms. O'Laughlin's sexual harassment allegations against Richardson. On January 31, 2006, Plaintiff provided Sally Lee with a written statement about Richardson, as part of the investigation

---

[2]When Plaintiff became a "Load Supervisor" his replacement for the job of Package Sort Aisle Supervisor was Danielle O'Laughlin.

of this sexual harassment complaint against Richardson. The statement recounted the prior incident in which several employees in the Package Secondary were discussing that Richardson "had put on a few extra pounds" and Ms. Moellering claimed to have seen Richardson with his shirt off. Plaintiff's statement to Ms. Lee concludes by indicating "At no time every (sic) did [Richardson] indicate that he wanted to file harassment."

Following an interview, Ms. Lee told Plaintiff that the proceeding involving Richardson "could get ugly" and that Plaintiff needed to be careful with whom he spoke. Plaintiff understood this to mean that Richardson "was going to try to defend himself some kind of way" and that Richardson was going to "present some kind of defense for getting fired." Lee later instructed Plaintiff that he was not to discuss the matter or to provide written statements to anyone. Ms. Lee gave these instructions to Plaintiff because of Richardson's history of soliciting character statements from unsuspecting coworkers in prior termination proceedings against Richardson.

After the investigation, Ms. Lee concluded that Richardson had engaged in sexual harassment, and Defendant terminated Richardson's employment. Richardson challenged that discharge through the grievance procedure. Plaintiff provided two written statements to Richardson. Plaintiff understood that Richardson was going to use Plaintiff's statements at a grievance hearing contesting his discharge. Plaintiff was discharged on March 8, 2006 because he violated Ms. Lee's instructions by providing these statements to Richardson.

On April 11, 2006, Plaintiff filed an EEOC charge of discrimination alleging race discrimination and retaliation. Upon receiving the charge, the Human Resources Manager, Ed Bailey, concluded that Plaintiff had engaged in misconduct, but that discharge was too harsh a penalty. On May 1, 2006, Mr. Bailey, on behalf of Defendant, offered Plaintiff an unconditional reinstatement. Plaintiff accepted the offer and returned to work on May 8, 2006.

Upon returning to work, Mr. Bailey decided to assign Plaintiff to a supervisor position on the Preload Operation. The assignment involved different hours of work but had the same rate of pay and benefits. The position was at the same location as Plaintiff's prior assignment. During the meeting in which Mr. Bailey informed Plaintiff of his new assignment, Plaintiff asked about recovering pay for the time between his discharge and his reinstatement. Mr. Bailey offered to pay Plaintiff for the time he was off work if Plaintiff dropped his discrimination charge with the EEOC. Plaintiff declined this offer, and Defendant did not give him any back pay. The EEOC subsequently issued Plaintiff a "right to sue" letter on October 20, 2006. Plaintiff did not file suit based on this charge of discrimination.

In August 2006, Plaintiff sustained a back injury while working as a pre-load supervisor. Plaintiff subsequently filed a second charge of discrimination with the EEOC. In the charge, Plaintiff complained of his new job assignment following his discharge, his injury in August 2006, and Defendant's failure to pay him for the time period between his March 2006 discharge and his reinstatement in May 2006. Plaintiff also alleged a charge of retaliatory discrimination for engaging in a "protected activity." Plaintiff claims that the "protected activity" that forms the basis of this lawsuit is either providing written statements to Richardson or passing on Richardson's complaints regarding Laura Moellering.

On or about December 3, 2007, Plaintiff filed a third EEOC charge of discrimination. In the charge, Plaintiff alleges that he was retaliated against by being written up, that his job was threatened when he asked to see a doctor for an alleged workplace injury, that he was impeded in his use of personal days, and he was told that he was "being monitored by audio and video tape and have [been] told that I am doing my job improperly." Plaintiff alleged that the protected

activity that forms the basis of this retaliation allegation was assisting Richardson in challenging his termination.

Plaintiff filed the instant lawsuit in July 2008. In his original complaint, Plaintiff alleged that he was being retaliated against for "participation as a character witness [for Richardson] in a harassment case." Plaintiff amended his complaint several times, and in his third Amended Complaint, Plaintiff alleges that he may have been retaliated against for informing his manager of a complaint Richardson made to Plaintiff regarding Laura Moellering. Plaintiff alleges that he informed his Manager, Rick Potter, of the complaints Richardson made to Plaintiff about Laura Moellering. Specifically, Plaintiff informed Mr. Potter of Ms. Moellering's claim that she had seen Richardson without his shirt, the dispute between Ms. Moellering and Richardson regarding gas money, and Ms. Moellering and Richardson criticizing each other's work. The most recent complaint also alleges that UPS violated several criminal statutes.

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of

material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the nonmoving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the nonmoving party must show there is sufficient evidence favoring the nonmoving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## IV.     DISCUSSION

### A.     Retaliation Claim

Plaintiff alleges that UPS retaliated against him for participating in a hearing involving an employee who had been discharged for sexual harassment. Under Title VII of the Civil Rights Act of 1964, an employer is prohibited from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "The two clauses of this section typically are described, respectively as the opposition clause and the participation clause." *Brannum v. Missouri Dept. of Corr.*, 518 F.3d 542, 547 (8th Cir. 2008). A plaintiff establishes a *prima facie* case for retaliation if he or she can "show (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006).

Plaintiff's retaliation claim is analyzed under the *McDonnell Douglas* burden-shifting analysis. *See Stewart v. Independent School Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007). Under this approach, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff is

able to do so, the burden then shifts to the employer to articulate a nondiscriminatory or non-retaliatory reason for the employment action. *Id.* If the employer is able to do so, the plaintiff then must show that the proffered reason is pretextual. *Id.* at 803-804; *see also Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir. 2005). A "presumption of discrimination is created when the plaintiff meets [his or her] burden of establishing a *prima facie* case of employment discrimination." *Rodgers*, 417 F.3d at 850. The Eighth Circuit further emphasizes that "[a] minimal evidentiary showing will satisfy this burden of production." *Id.* The burden then shifts to the employer, and "[i]f the employer meets its burden, 'the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination.'" *Id.* (quoting *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005)).

In Defendant's Summary Judgment Motion, Defendant argues that Plaintiff failed to present a *prima facie* case of retaliation because the undisputed facts demonstrate that Plaintiff did not engage in any protected activities under Title VII. The Court addresses Defendant's argument below with respect to both the opposition and participation prongs.[3]

---

[3]After reading the pleadings, the Court has a difficult time determining what adverse employment actions Plaintiff allegedly suffered. At certain points in the pleadings, Plaintiff suggests that the adverse employment action occurred when Defendant terminated his employment on March 8, 2006. However, the facts indicate that Defendant reinstated Plaintiff shortly thereafter on May 1, 2006. Additionally, Plaintiff did not file his suit in a timely fashion following his termination. Upon receiving a right to sue letter from the EEOC, a plaintiff has ninety days to file suit. 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.28. Plaintiff received his right to sue letter from the EEOC on October 20th, 2007, and he did not file suit until July 28, 2008. This time period exceeded the ninety day statutory requirement. As a result, Plaintiff is procedurally barred from alleging that his termination was the adverse employment action motivating his suit.

At other points, Plaintiff suggests that he suffered adverse employment actions after his reinstatement. In the third amended complaint, Plaintiff alleges the terms of his employment changed after Defendant reinstated him. As support, Plaintiff offers some evidence by alleging that he suffered a workplace injury after being assigned to a new job position and that he was more closely monitored by his supervisors. While the Court is not convinced that Plaintiff suffered any adverse employment action, the Court construes these pleadings in the light most

### 1.    *Opposition Prong*

The first question for the Court is whether Plaintiff engaged in statutorily protected conduct under the "Opposition Prong." Plaintiff alleges that the "protected activity" that forms the basis of this lawsuit is either providing written statements to Richardson or passing on Richardson's complaints regarding Laura Moellering. Title VII prohibits retaliation against an employee who opposes an unlawful employment practice, or an employee who opposes employment actions that are not unlawful, "so long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful." *Barker v. Missouri Department of Corrections*, 513 F .3d 831, 834 (8th Cir. 2008). "To demonstrate the presence of protected opposition, a plaintiff must show a good faith reasonable belief that his employer engaged in a discriminatory employment practice." *Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 100 (8th Cir. 1995) (internal citations omitted); *Brannum v. Missouri Dept. of Corrections*, 518 F.3d 542, 547 (8th Cir. 2008). The Eighth Circuit requires that Plaintiff demonstrate that the opposition is related to unlawful discrimination in some way. *See Hunt v. Nebraska Public Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002) (the Court found that Plaintiff was not engaged in a protected activity by complaining to her employer about not receiving a raise and a promotion because Plaintiff did not attribute these failures to sex discrimination). Plaintiff must also demonstrate that the opposition was related to an employment practice. *See Evans v. Kansas City Mo. Sch. Dist.*, 65 F.3d 98, 100-01 (8th Cir. 2000) (Plaintiff, a teacher, did not engage in protected opposition when he protested that a plan to diversify the student body of his school disregarded the needs of

---

favorable to the Plaintiff and assumes that a genuine issue of material fact exists as to whether Plaintiff suffered an adverse employment action.

the current student body because Plaintiff failed to allege any discriminatory employment practice).

In this case, Plaintiff provided two written statements to Richardson. Plaintiff understood that Richardson was going to use Plaintiff's statements at a grievance hearing contesting his discharge. However, Plaintiff provides no evidence that he provided these statements in an effort to oppose any discriminatory employment practice by Defendant. In one statement, Plaintiff recalled an incident where "Laura talked about how she had seen [Richardson] with his shirt off and how he had gotten fat." In the second statement, Plaintiff recalled a complaint from Richardson regarding Laura's method of freeing stuck packages on the slide. By providing these statements, Plaintiff did not oppose any conduct. Additionally, Plaintiff's act of passing on Richardson's complaints does not establish that Plaintiff was opposing any conduct made unlawful by Title VII. Even if the Court assumes that Plaintiff's actions constituted opposition, Plaintiff failed to attribute Defendant's actions to any unlawful discrimination or harassment. Plaintiff made no allegations of discriminatory employment practices in either of the statements provided to Richardson or any report he made to his managers. Thus, Plaintiff did not engage in a protected activity under Title VII, and as result, Plaintiff fails to demonstrate a prima facie case of retaliation.

Furthermore, even if the Court assumes that Plaintiff's statements were an attempt to oppose Defendant's conduct, Plaintiff's actions still did not constitute statutorily protected conduct under Title VII. The Supreme Court has held that actionable "sexual harassment ... must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986) (*quoting Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir.1982)). In meeting this standard, plaintiffs must

show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (*quoting Meritor*, 477 U.S. at 65). "Whether a work environment is so hostile or abusive as to alter the terms and conditions of employment is to be judged in light of all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Brannum*, 518 F.3d at 548 (*quoting Harris*, 510 U.S. at 23).

The Supreme Court has found that an employee did not engage in statutorily protected activity by objecting to a single sexually offensive comment, because "[n]o reasonable person could have believed that the single incident ... violated Title VII's" prohibition against sexual harassment." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 269-71 (2001). The Eighth Circuit has also held that relatively tame comments are insufficient as a matter of law to support an objectively reasonable belief that behavior amounted to unlawful sexual harassment. *Brannum*, 518 F.3d at 548-549; *See also, Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 992-93 (8th Cir.2003) (finding that a single incident in which a co-worker grabbed the plaintiff-employee's buttocks and later joked about it in front of her and another co-worker did not rise to the level of actionable sexual harassment).

The statements Plaintiff provided to Richardson are insufficient to support an objectively reasonable belief that unlawful discrimination occurred. Similarly, any complaints that Plaintiff reported to his supervisor regarding these incidents are insufficient to support an objectively reasonable belief that unlawful discrimination occurred. In the first statement [Defense Exhibit C], Plaintiff states that "At no time during my rein in the Package Secondary did Lamont [Richardson] ask to file a harassment charge against Laura Moellering." Plaintiff recalled that

"Laura talked about how she had seen [Richardson] with his shirt off and how he had gotten fat." Plaintiff also claimed that Ms. Moellering "hat [*sic*] pat Lamont [Richardson] on his rear." In the second statement [Defense Exhibit D], Plaintiff recalls that Richardson criticized the way Ms. Moellering "would climb up on the slide on her hands and knees." Like *Brannum* and *Meriwether*, Plaintiff's complaints fail to show that the harassment was so severe or pervasive as to alter the conditions of Richardson's employment and create an abusive working environment. At best, Plaintiff alleges only two insignificant acts which include Ms. Moellering calling Richardson fat and also patting Richardson on his rear. Following *Meriwether*, the Court finds that these actions alone are insufficient to support an objectively reasonable belief that unlawful discrimination occurred. Additionally, Plaintiff reported to his manager that Richardson did not wish to file a harassment charge. The evidence suggests that neither Richardson nor Plaintiff believed that these incidents amounted to unlawful harassment. Based on the facts presented, the Court finds that Plaintiff's allegations are insufficient, as a matter of law, to demonstrate that Plaintiff had an objectively reasonable belief that Ms. Moellering's conduct violated Title VII.

Plaintiff fails to establish that he engaged in a statutorily protected activity under Title VII. Since Plaintiff fails to demonstrate that he engaged in a protected activity, the Court finds that Plaintiff failed to establish a *prima facie* case of retaliation under the opposition prong.

### 2.    *Participation Prong*

Defendant also argues that Plaintiff did not participate in an investigation or proceeding under Title VII, and as a result, Plaintiff's conduct cannot constitute "protected activity" under the "participation clause." The "participation clause" makes it unlawful for employers to retaliate against an employee or applicant for employment because the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

subchapter." 42 U.S.C. § 2000e-3(a). Therefore, conduct is only protected if it qualifies as participation "in any manner in a Title VII 'investigation, proceeding, or hearing.'" *Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir. 1999).

Courts have held that a variety of activities are "protected activities" under the "participation prong" of Title VII. The Eighth Circuit has found that a plaintiff who files a charge of discrimination or complains of discrimination meets the requirement of engaging in a protected activity. *Brower*, 178 F.3d at 1005-06. The Eleventh Circuit has found that other types of activities are protected including a plaintiff's involuntary participation as a witness in a Title VII proceeding. *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186-89 (11th Cir. 1997). Other Circuits have also held that protected activities include actively assisting a co-worker in asserting his or her Title VII rights. *Eichman v. Ind. State Univ. Bd. of Trs.*, 597 F.2d 1104, 1107 (7th Cir. 1979).

Some Circuits have gone so far as to find that formal complaints are not required when management officials believe the filing of a formal complaint is imminent or when the conduct was an "intimately related and integral step in the process of making a formal charge." *Brower*, 178 F.3d at 1006 (citing *Hashimoto v. Dalton*, 118 F.3d 671, 679 (9th Cir. 1997) and *Croushorn v. Bd. of Trustees of Univ. of Tenn.*, 518 F. Supp. 9, 23 (M.D. Tenn. 1980). The Eighth Circuit provides some guidance concerning situations where the Plaintiff did not file a formal complaint. The Court has held that "not all discussions with individuals who are part of the Title VII grievance process or all informal complaints will amount to participation in a Title VII proceeding." *Brower*, 178 F.3d at 1006. The Court requires that "at a minimum, there would have to be factual allegations of discrimination against a member of a protected group and the beginning of a proceeding or investigation under Title VII." *Id.*

Based on the facts presented, the Court finds that Plaintiff's actions do not constitute a "protected activity" under the participation prong of Title VII. The circumstances underlying Plaintiff's claims involve accusations made about Richardson by Ms. O'Laughlin, who accused Richardson of sexually harassing conduct. As a result of these accusations, Sally Lee, a manger in Defendant's Security Department, began an investigation regarding these charges. As part of the investigation, Ms. Lee solicited a statement from the Plaintiff because Plaintiff had previously supervised Richardson. Plaintiff provided a written statement to Ms. Lee. In the statement, Plaintiff recalled an event involving Richardson and another female employee, Ms. Laura Moellering, in which Richardson asked him to separate Richardson and Ms. Moellering because she said that "Lamont had gain weight (sic) because she had seen him with his shirt off." Plaintiff also indicated in that statement that after the event he "always kept a person between [Richardson] and Laura and everything was fine." Plaintiff went on to state that "at no time every (sic) did [Richardson] indicate that he wanted to file harassment.

The facts show that neither Richardson nor Plaintiff filed a formal complaint regarding Ms. Moellering's behavior. Also, Plaintiff provides no evidence that Defendant believed the filing of a complaint was imminent. Plaintiff also fails to demonstrate that his act of providing two statements to Richardson and reporting the incident to his superiors was an integral step in the process of making a formal charge. Since no investigation was ever prompted regarding Richardson's allegations towards Ms. Moellering, the Court finds that Plaintiff's actions in reporting this incident during a subsequent investigation of Richardson did not constitute a protected activity under the "participation prong."

Even if the Court expands the current definition of "participation" to include Plaintiff's actions, Plaintiff still fails to demonstrate that this type of participation was a "protected activity"

under Title VII.  Plaintiff claims that the "protected activity" that forms the basis of this lawsuit is either providing written statements to Richardson or passing on Richardson's complaints regarding Laura Moellering.  The question before the Court is whether the participation prong extends protection to employees who oppose a co-employee's charge of discrimination.

The Seventh Circuit addressed a similar issue involving a Plaintiff who opposed a co-employee's charge for discrimination.  *See Twisdale v. Snow*, 325 F.3d 950 (7th Cir. 2003).  In *Twisdale*, the Plaintiff participated in an EEOC investigation but opposed the claimant's position. *Id.* at 952.  After being harassed by his supervisors, the Plaintiff brought a Title VII retaliation claim against his employer.  *Id.* at 951.  In the claim, Plaintiff alleged that his supervisors retaliated against him after he opposed the discrimination claims levied by another employee.  *Id.* at 952.  The District Court granted Defendant's summary judgment motion, and the Seventh Circuit affirmed the decision.  *Id.* at 950.  In reaching its decision, the Seventh Circuit focused on the purpose behind Title VII.  *Id.* at 952.  The Court concluded that "the statute has a limited purpose of preventing certain forms of discrimination."  *Id.*  After looking at case law, legislative history, interpretations of government agencies, and scholarly commentary, the Court concluded that Title VII did not protect "employees whose resistance to charges of discrimination made by their coworkers provokes the employer's ire."  *Id.*  Based on these findings, the Court held that the participation prong did not protect employees whose participation in the investigation was limited to opposing a charge of discrimination.  *Id.* at 953.

Like *Twisdale*, Plaintiff has brought a Title VII retaliation claim against Defendant by alleging that Defendant retaliated against him after he opposed the discrimination claims levied by another employee, Ms. O'Laughlin.  When Plaintiff provided the two written statements to Richardson, he understood that Richardson was going to use the statements at a grievance

hearing to contest his discharge for sexually harassing Ms. O'Laughlin.  Furthermore, the facts show that Plaintiff had no personal knowledge regarding the complaints raised by Ms. O'Laughlin.  At the time the alleged events occurred, Plaintiff was no longer supervising Richardson.  Plaintiff's decision to disregard Defendant's express commands and provide Richardson with two written statements to use at the grievance hearing is not entitled to Title VII protection for several reasons.  First, unlike other claims traditionally brought under the participation prong of Title VII, Plaintiff's opposition to the discrimination charges placed Defendant in jeopardy of violating another employee's statutory rights under Title VII.  In addition, Plaintiff lacked any personal knowledge regarding the events in question.  Given these facts and Title VII's goal of preventing workplace harassment, this Court agrees with the Seventh Circuit's view and finds that the participation prong of Title VII does not extend protection to a employee who is disciplined by an employer for opposing a discrimination charge brought by a co-employee.

In conclusion, the Court finds that Plaintiff did not engage in a "protected activity" under the "participation prong" of Title VII.  Defendant is entitled to summary judgment because Plaintiff fails to demonstrate a *prima facie* case for retaliatory discrimination.

### B.      Claims Brought Under Federal Criminal Statutes

Plaintiff alleges several violations of federal criminal statutes.  Specifically Plaintiff alleges that Defendant violated: 18 U.S.C. § 1512(b) (threats and intimidation of a witness, victim, or informant); 18 U.S.C. § 1512(c) (corruptly altering/destroying documents or obstructing or influencing any official proceeding); 18 U.S.C. § 1513 (retaliating against a witness, victim, or informant); 18 U.S.C. § 1341 (frauds and swindles); 18 U.S.C. § 1344 (bank fraud); 18 U.S.C. § 241 (conspiracy against rights); and 18 U.S.C. § 1962(d) (criminal racketeering).  "Except as

otherwise provided by law, the conduct of litigation in which the United States, an agency, or

officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of

the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516 (2009).

As a result, private individuals do not have the right to prosecute defendants for alleged violations

of federal criminal statutes. *See In re Persico*, 522 F.2d 41, 54 (2d Cir. 1975); *Uka v. Mama's*

*Bar & Grill Rest.*, 2006 WL 1752293, *10 (E.D. Mo. 2006).

      In Plaintiff's Response to the Motion for Summary Judgment [doc. #46], Plaintiff appears

to waive his claims brought under these federal criminal statutes by conceding that he cannot

prosecute the criminal law violations listed. However, since Plaintiff does not explicitly withdraw

these charges, the Court assumes that Plaintiff is seeking a civil remedy for each of these alleged

violations and addresses each claim, in turn.

      *1.*        ***18 U.S.C. § 1512 (Tampering with a Witness) & 1513 (Retaliating against a***

           ***Witness)***

      Federal law provides a civil remedy for Plaintiff's claims under 18 U.S.C. 1512 & 1513.

The statute provides that

> "A United States district court, upon application of the attorney for the
> Government, shall issue a temporary restraining order prohibiting harassment of a victim
> or witness in a Federal criminal case if the court finds, from specific facts shown by
> affidavit or by verified complaint, that there are reasonable grounds to believe that
> harassment of an identified victim or witness in a Federal criminal case exists or that such
> order is necessary to prevent and restrain an offense under section 1512 of this title, other
> than an offense consisting of misleading conduct, or under section 1513 of this title."

18 U.S.C. § 1514 (2009).

      Plaintiff's claims under Section 1512 and 1513 are precluded for several reasons. First,

the remedy is not sought by an "attorney for the government." Instead, Plaintiff asserts a claim

under these statutes. Since Plaintiff is not an "attorney for the government," he is not entitled to

any remedy under these statutes.  Secondly, no federal charges have been brought against Defendant.  Therefore, Plaintiff is neither a victim nor a witness to a federal criminal case.  Lastly, Plaintiff fails to demonstrate that a temporary order is necessary to prevent and restrain an offense under either Section 1512 or 1513.  As a result, Defendant is entitled to summary judgment as to any and all civil and criminal claims asserted under 18 U.S.C. §§ 1512-1514.

2.      **18 U.S.C. § 1341 (Frauds and Swindles) & 1344 (Bank Fraud)**

Plaintiff also asserts that Defendant committed mail fraud and bank fraud.  To support a claim for mail or bank fraud, the government must bring the charges.  *See U.S. v. Manzer*, 69 F.3d 222, 226 (8th Cir. 1995) (holding that in order to sustain charges of mail or wire fraud, the government need only prove: (1) the existence of a scheme to defraud, and (2) the use of the mails or wires for purposes of executing the scheme); *U.S. v. Flanders*, 491 F.3d 1197, 1212 (10th Cir. 2007) (holding that to obtain bank fraud conviction, government must prove that (1) defendant knowingly executed or attempted to execute a scheme or artifice to defraud a financial institution, (2) defendant had the intent to defraud a financial institution, and (3) the bank involved was federally insured).  A Court may issue a civil injunction for these crimes if the Attorney General chooses to bring a civil action in federal court to enjoin such violation.  18 U.S.C. 1345(a)(1)-(2).

In this case Plaintiff's mail and bank fraud claims must fail.  To date, neither the Attorney General nor any of his agents has brought a civil action to enjoin any violations by Defendant in this case.  The Court grants Defendant's motion for summary judgment as to Plaintiff's claims brought under 18 U.S.C. §§ 1341 & 1344.

3.      **18 U.S.C. § 241 (Conspiracy Against Rights) & 18 U.S.C. 1962(d) (Criminal Racketeering)**

Plaintiffs seek to pursue claims against Defendant for violating 18 U.S.C. § 241 which makes it a crime for two or more persons to conspire to deprive another of any constitutional rights and also 18 U.S.C. § 1962(d) which makes it a crime to engage in racketeering activities.

Plaintiff's claims under 18 U.S.C. § 241 are precluded because the statute provides no basis for a civil cause of action. *Christian Populist Party of Ark. v. Sec'y of State of State of Ark.*, 650 F.Supp. 1205, 1214 (E.D. Ark. 1987). Similarly, Plaintiff's claims under 18 U.S.C. § 1962(d) are precluded. "Civil actions under the Act require a showing of a pattern of 'racketeering activity' on the part of a defendant, as that term is defined in 18 U.S.C. § 1961(1)." *Id.* Plaintiff sets forth no evidence that defendant committed any of the required predicate offenses set out in § 1961(1). Accordingly, the Court grants Defendant's motion for summary judgment as to the claims brought under 18 U.S.C. § 241 and 18 U.S.C. 1962(d)

### C. Worker's Compensation

Plaintiff also asserts claims under 18 U.S.C. §§ 1512(b) & 1513 by alleging that he suffered permanent injuries after being "unlawfully terminated and subsequently moved" to another position. The Missouri Worker's Compensation Act provides that "every employer and every employee, except as in this chapter otherwise provided, shall be subject to the provisions of this chapter and respectively to furnish and accept compensation as herein provided." Mo. Rev. Stat. § 287.060 (2005); *See also*, Mo. Rev. Stat. § 287.120(2). To the extent Plaintiff attempts to recover for any work related injuries, the Court finds such claims are precluded by this exclusivity provision in the Missouri Worker's Compensation Act. The Court grants Defendant's Motion for Summary Judgment as to these claims.

## V. CONCLUSION

The Court finds that Plaintiff is unable to establish a *prima facie* case of retaliation, thus, the Court grants summary judgment in favor of Defendant on this claim. Additionally, the Court finds that Plaintiff is not entitled to relief under 18 U.S.C. § 1512(b) (threats and intimidation of a witness, victim, or informant); 18 U.S.C. § 1512(c) (corruptly altering/destroying documents or obstructing or influencing any official proceeding); 18 U.S.C. § 1513 (retaliating against a witness, victim, or informant); 18 U.S.C. § 1341 (frauds and swindles); 18 U.S.C. § 1344 (bank fraud); 18 U.S.C. § 241 (conspiracy against rights); and 18 U.S.C. § 1962(d). To the extent Defendant is allowed to pursue civil remedies under these federal criminal statutes, the Court finds that Plaintiff is unable to establish a *prima face* case for any of these claims. Lastly, the Court finds that Plaintiff's claims for work-related injuries are precluded under the exclusivity provisions of the Missouri Worker's Compensation Act.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [doc. #42] is **GRANTED**.

Dated this 6th Day of November, 2009.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE